[Civ. No. 3140.   Third Appellate District.—December 9, 1926.]

# ALICE T. JAMES, Appellant, v. HOWARD T. JAMES, Respondent.

[1] QUIETING TITLE—CONFLICTING CONVEYANCES—SUBSEQUENT PURCHASER—KNOWLEDGE—CONSIDERATION—BURDEN OF PROOF.—In an action to quiet title to real property, where the defendant bases his claim of ownership upon a deed executed and recorded subsequent to the execution and delivery of an unrecorded deed to plaintiff, the burden is upon defendant of showing that the deed accepted by him was received without actual knowledge of the prior unrecorded deed, and, also, that he parted with a valuable consideration as the purchase price of the property.

[2] ID.—RECITALS IN DEED—PRIMA FACIE PROOF.—In such action, the recital in the deed upon which defendant relied that the grantor for a consideration of a specified sum "to him in hand paid, the receipt whereof is hereby acknowledged, does hereby grant to" defendant all right, title, and interest of the grantor in and to the premises in controversy, cannot be accepted as *prima facie* proof of such payment.

[3] ID.—CONSIDERATION—RECITALS IN DEED—EVIDENCE.—Where the payment of a valuable consideration becomes a material question, the recital in a deed of a valuable consideration paid by the grantee is only evidence of such payment as against the grantor, or against those claiming under the grantor by a subsequent conveyance, and it is not evidence as against strangers, or as against the owner of a prior equity, or as against one claiming under a prior deed from the same grantor.

[4] ID.—COMPLETED CONVEYANCE—FRAUD—BREACH OF ORAL AGREEMENT.—Where plaintiff had not been guilty of any fraudulent representations or fraudulent act relative to the conveyance to her by her husband and there was nothing left to be done or performed with relation to the instrument by said grantor, the conveyance was not rendered void by reason of plaintiff's breach of her oral agreement to make a will leaving the property upon her death to certain designated beneficiaries.

[5] ID.—EXECUTED GRANT—SUBSEQUENT FAILURE OF PERFORMANCE.—Where a contract or agreement on the part of the vendor is wholly executed, the mere promise and failure to perform on the part of the grantee thereafter is not sufficient ground for setting aside a deed.

---

1.   See 22 Cal. Jur. 169.
3.   See 9 Cal. Jur. 114; 8 R. C. L. 968.
5.   See 9 Cal. Jur. 141.

[6] ID.—PRESENT CONVEYANCE—ORAL PROMISE TO MAKE WILL—ABSENCE OF CONDITIONS.—Under section 1056 of the Civil Code, where an instrument is delivered to the grantee as the present deed of the grantor, upon the oral promise of the grantee to make a will leaving the property upon her death to certain beneficiaries, but no such condition is expressed in the instrument, a present title is vested in the grantee without any condition whatever affecting its integrity.

[7] ID.—BURDEN OF PROOF.—In an action to quiet title to real property the plaintiff must recover upon the strength of her own title and not upon the weakness of the title claimed by her adversary.

[8] ID.—DEED—PRODUCTION BY GRANTEE—PRIMA FACIE PROOF.—A deed, when duly executed and acknowledged, in the possession of the grantee and produced by him, is admissible in evidence as *prima facie* proof without anything further.

[9] ID.—STATEMENTS OF GRANTOR—DECLARATIONS AGAINST INTEREST—HEARSAY.—In an action to quiet title to certain real property claimed by plaintiff under an instrument of conveyance duly executed and delivered, but not recorded, as against one claiming title to said property under a subsequent instrument of conveyance from plaintiff's grantor, and which instrument was duly recorded, statements made by said grantor just before and after the execution and delivery of the conveyance by him to plaintiff and which would indicate that said grantor had divested himself of title, are admissible as declarations against interest, although partaking of the nature of hearsay testimony.

(1) 39 Cyc., p. 1781, n. 96, 97.   (2) 22 C. J., p. 970, n. 14.   (3) 22 C. J., p. 970, n. 14.   (4) 18 C. J., p. 168, n. 43; 30 C. J., p. 689, n. 20.   (5) 18 C. J., p. 168, n. 49.   (6) 18 C. J., p. 211, n. 47; 27 C. J., p. 327, n. 47; 30 C. J., p. 689, n. 20 New.   (7) 32 Cyc., p. 1329, n. 70.   (8) 18 C. J., p. 414, n. 2; 32 Cyc., p. 1373, n. 27.   (9) 22 C. J., p. 232, n. 80, p. 234, n. 6.

APPEAL from a judgment of the Superior Court of Los Angeles County.   William C. Doran, Judge.   Reversed.

The facts are stated in the opinion of the court.

Walter B. Kibbey for Appellant.

Charles L. Evans and Whitney Smith for Respondent.

6.   See 9 Cal. Jur. 165.
7.   See 22 Cal. Jur. 167.
8.   See 9 Cal. Jur. 193; 8 R. C. L. 999.

PLUMMER, J.—Action to quiet title to certain lots of land situate, lying, and being in the city of Los Angeles, county of Los Angeles. The action was originally begun against Howard T. James and Hortense James, his wife. Hortense James having died, the action was dismissed as to her.

The complaint is in the usual form of a pleading in an action to quiet title, alleges that the plaintiff is and ever since the month of August, 1922, has been the owner of the lots of land described in the complaint, alleges that the defendant claims some interest therein, and that the interest of the defendant is without right, etc. Judgment was prayed that the plaintiff's title to said premises be quieted. The answer of the defendant denies the ownership of the plaintiff, and, by way of affirmative defense, alleges ownership of one-half interest in and to the described premises. This portion of the defendant's answer, after alleging that the plaintiff and Thomas F. James were, during all the times mentioned in the pleadings, husband and wife and owners, as joint tenants, of property described in plaintiff's complaint, is in the following language:

"That on said 22nd day of August, 1922, the said Thomas F. James made his certain deed of conveyance to the plaintiff herein for the undivided one-half ($\frac{1}{2}$) interest of the said Thomas F. James in and to said real property; that said deed was placed in the hands of said plaintiff with the understanding and agreement and upon the statement made by the said plaintiff that she would immediately make and execute her will wherein and whereby her said husband was to be the sole beneficiary, should he survive her, and in the event the said husband did not survive the said plaintiff, all of the property belonging to the plaintiff at the time of her death was to be willed, by the will hereinbefore alleged, unto Arthur C. James, a two-fifth ($\frac{2}{5}$) interest and Howard T. James (this defendant) a three-fifth ($\frac{3}{5}$) interest; that by the said will the said plaintiff was to nominate and appoint the said Thomas F. James executor, should he be living, and in the event of his death before the death of the plaintiff the said Howard T. James, this defendant, was to be nominated and appointed executor.

"This defendant alleges that the said plaintiff did not make and execute a will in accordance with the agreement between her and the said Thomas F. James at the time of the making of the deed hereinbefore mentioned; that she never made and executed such a will; that the consideration for the deed from the said Thomas F. James to the said Alice T. James has wholly failed; that there is no consideration for the said deed from the said Thomas F. James to the said Alice T. James and that the deed from the said Thomas F. James to the said Alice T. James was never delivered to the said Alice T. James except upon the conditions and for the consideration in this special defense alleged and that it was not the intention of the said Thomas F. James that the said deed should be delivered to the said Alice T. James and that it was not intended by the said Thomas F. James that the title to an undivided one-half (½) interest in said real property should pass to the said Alice T. James except upon the fulfillment by her of the conditions hereinbefore alleged."

The answer then further alleges that said deed of Thomas F. James to Alice T. James was not recorded until some months after said month of August, 1922; that in the meantime the said Thomas F. James learned that said Alice T. James had not made any will, and thereupon made, executed, and delivered a good and sufficient bargain and sale deed for all of his interest in said premises to the defendant Howard T. James. This deed bears date of September 22, 1922, and was recorded on the same day.

At the conclusion of the trial the court made and filed its findings of facts, only one of which needs to be set forth herein:

"IV.

"The court further finds that on or about the 22nd day of August, 1922, the plaintiff and Thomas F. James, who at said time was the husband of the said Alice T. James, were the owners as joint tenants of that certain real property described in plaintiff's complaint; that on said 22nd day of August, 1922, the said Thomas F. James made his certain deed of conveyance to the plaintiff herein for the undivided one-half (½) interest of the said Thomas F. James in and to said real property; that said deed was placed in the hands of the said plaintiff with the understanding and agreement

and upon the statement made by the said plaintiff that she would immediately make and execute her will wherein and whereby her said husband was to be the sole beneficiary, should he survive her, and in the event the said husband did not survive the said plaintiff, all of the property belonging to the plaintiff at the time of her death was to be willed, by the will hereinbefore alleged, unto Arthur C. James, a two-fifths (⅖) interest, and Howard T. James (this defendant) a three-fifth (⅗) interest; that by the said will the said plaintiff was to nominate and appoint the said Thomas F. James executor, should he be living, and in the event of his death before the death of the plaintiff the said Howard T. James, this defendant, was to be nominated and appointed executor.

"That the said plaintiff did not make and execute a will in accordance with the agreement between her and the said Thomas F. James at the time of the making of the deed hereinbefore mentioned; that she never made and executed such a will; that the consideration for the deed from the said Thomas F. James to the said Alice T. James has wholly failed; that there is no consideration for the said deed from the said Thomas F. James to the said Alice T. James, and that the deed from the said Thomas F. James to the said Alice T. James was never delivered to the said Alice T. James and that it was not the intention of the said Thomas F. James that the said deed should be delivered to the said Alice T. James, and that it was not intended by the said Thomas F. James that the title to an undivided one-half (½) interest in said real property should pass to the said Alice T. James except upon the fulfillment by her of the conditions hereinbefore found to have been imposed.

"That the said deed from the said Thomas F. James to the said Alice T. James was not recorded until some months after the said month of August, 1922, and that in the meantime, when the said Thomas F. James learned that the said Alice T. James had not made the will in accordance with her agreement made at the time of the making by the said Thomas F. James to the said Alice T. James of the deed bearing date of the 22nd day of August, 1922, he made, executed and delivered unto the defendant, Howard T. James, a good and sufficient grant, bargain and sale deed for all of the interest that the said Thomas F. James owned

or had or possessed in the real property described in this action; that the said deed from the said Thomas F. James to the defendant Howard T. James, was duly recorded in the office of the county recorder (of the county of Los Angeles) of the state of California immediately after its execution and delivery, and that the said deed from the said Thomas F. James to the said defendant was recorded prior to the recordation of the deed from the said Thomas F. James to the said Alice T. James; that at the time of delivery of the deed to defendant and the recordation thereof, defendant did not have any knowledge of the deed to plaintiff dated August 22, 1922.''

Conclusions of law based upon this finding were drawn in favor of the defendant and judgment entered accordingly.

The testimony upon which finding No. 4 is based, as set forth in the transcript, shows the following facts: That prior to the sixteenth day of August, 1922, the plaintiff and Thomas F. James acquired the property described in plaintiff's complaint by a deed conveying the same to them as joint tenants; that on the sixteenth day of August, 1922, the plaintiff and said Thomas F. James went to the office of Charles L. Evans, an attorney at law, and then and there a deed was executed by the said Thomas F. James, purporting to convey all of his interest in the described premises to his wife, the plaintiff Alice T. James. This deed contains, among other things, the following paragraph: ''This conveyance is made, given and accepted by the parties hereto for the purpose of vesting the foregoing described real property in the grantee herein as her sole and separate property without any limits or restrictions whatsoever.''

The testimony of the plaintiff to the transaction is as follows: ''I received the deed on August 16th in the presence of Mr. Evans and my husband on the day the deed was handed to me. There was a conversation between Mr. Evans, my husband and myself. Mr. Evans remarked that Mr. James had told him about things at the house and had this transfer made up, transferring his interest to me. After this Mr. Evans asked me what would be my disposition of the property in case of my death. I told him I did not know what to say and asked, 'What does Mr. James want?' And he remarked that he wanted it left to his boys and I said, 'All right.' There was something said in this con-

versation about my making a will, but there was no date set. I was to make a will in favor of Howard and his brother. After the deed was handed to me, Mr. Evans told me not to record the deed until I was told to or that the property was in danger of being involved. It was not said that I should not record the deed until after the will was made. That was at the time the deed was executed on August 16th, in the office of Mr. Evans. There was nothing said by any of us to the drawing of a will. I took the deed away on the 16th of August and had it recorded on the 11th day of October, 1922. I don't remember having any conversation with my husband regarding the will between August 16th and October 11, 1922. Before I went to Mr. Evans' office I had a conversation with my husband who came in—he had been sprinkling the lawn and came in from the garden and asked me if I could go over town with him and he said before Mrs. Parks that he was going to—that he was sprinkling the lawn for the last time, when he came back it would be all mine and I would have to arrange for the sprinkling after that. That was on August 16th, 1922. There was no mention of a will in that conversation. Mr. James came back with me from Mr. Evans' office. I heard him tell Mrs. Parks that he had deeded it to me and I was the sole owner of the property. Mr. James then went to the mine at Searchlight or Crescent as it was called after that. . . .

"On August 22nd or August 21st, I received a letter from Mr. James: (We here quote the only part thereof material to this case.) 'You will now admit, won't you, Alice, that I have proven when it came to the hard test to be a true friend and that notwithstanding squabbles, I transferred to you all I had including personal financial standing in Los Angeles,' " etc.

The testimony of Mr. Evans, called as a witness on behalf of the defendant, concerning the transaction is, in substance, as follows: "About the middle of August, 1922, Mr. and Mrs. James came to my office. On the day or two before the 16th day of August, 1922, Mr. James talked with me about the possibility of having some difficulty at his mine, or in the mine in which he was interested. On the 16th day of August, they both came to my office, and the deed which has been introduced in evidence was drawn or had been drawn.

There was some conversation between Mrs. James, her husband and myself as to this deed and the reason for it. Mr. James said there was a likelihood of some difficulty at the mine. He wanted to protect his wife and his two boys. Before the deed was given to her, or all in the same conversation, he said: 'Now, you are to make a will to the two boys, Arthur and Howard' and she said: 'Yes.' There was some discussion as to the division of the property. She said that she would not—that this deed would not be recorded until after the will was made. She gave me at that time data for the will to be drawn for her and she said she would come down in few days and that the will should be drawn and that she would execute it, leaving all the property of which she died possessed to Howard James three-fifths and to Arthur James two-fifths. This witness then states that the deed which was given to her at that time was not to be recorded until after it had developed whether or not there would be any claims that the husband might be liable for. I asked her age at the time and her place of residence. If Mr. James, her husband, were living, he was to be the executor of the estate without bonds. She did not waive a bond in Howard's case. The deed was turned over and the conversation was all one transaction. The deed was the only instrument executed at that time. The only thing said as to when the deed should be recorded was that it should not be recorded until after it was determined whether there were any claims. That was all that was said about it. I never made a will for Mrs. James. I took her telephone number and did not call her up. The deed was given to Mrs. James in my office.''

Howard T. James, the defendant, testified as follows: ''I am one of the defendants in this action and Thomas F. James is my father; I have seen the document handed me before and that is my father's signature. My father gave it to me and I took it up and had it recorded on the day it was given to me, one the 22nd day of September, 1922.'' (Here was exhibited, identified, and admitted in evidence the deed to the defendant from Thomas F. James, purporting to convey to the defendant all the right, title, and interest of the party of the first part in and to the premises described in plaintiff's complaint.) ''I knew nothing about the deed from my father to his wife at the time I took this deed.''

Lillian Parks, a witness called on behalf of the plaintiff, was called to testify as to the conversation with Mr. James on the day of the execution of the deed by Mr. James to the plaintiff. After stating that she had had such conversation, the court sustained an objection thereto on the ground that it was not rebuttal, stating that it might have been admissible in chief as declarations against interest, but that as Mr. James did not testify, there was nothing in the testimony to be rebutted.

The finding of the trial court which we have set forth is to the effect that there was no delivery of the deed except as conditional upon the plaintiff executing a will devising and bequeathing the described property to Howard T. James and his brother, Arthur James, and, also, that there was a failure of consideration for the deed executed and delivered by Thomas F. James to Alice T. James. There is no testimony in the record nor finding by the court to the effect that Howard T. James ever paid any consideration, valuable or otherwise, for the execution and delivery to him of the instrument dated September 22, 1922, purporting to convey all the right, title, and interest of Thomas F. James to the defendant Howard T. James.

[1] The defendant in this case, basing his claim upon a deed executed and recorded subsequent to the execution and delivery of an unrecorded deed, takes upon himself the burden of showing that the deed accepted by him was received without actual knowledge of the prior unrecorded deed and, also, that he has, in fact, parted with a valuable consideration as the purchase price of the property. In *Black Eagle Oil Co.* v. *Belcher*, 22 Cal. App. 258 [133 Pac. 1153], the law in this particular is set forth in the opinion as follows: " 'To entitle a party to protection as such purchaser, he must prove the payment of the purchase money in good faith and without notice, actual or constructive, prior to and down to the time of its payment, for if he had notice at any moment of time before the payment of the money, he is not a *bona fide* purchaser.' (*Boone* v. *Chiles*, 10 Pet. (U. S.) 210 [9 L. Ed. 388, see, also, Rose's U. S. Notes]; *Scott* v. *Umbarger*, 41 Cal. 419; *Eversdon* v. *Mayhew*, 65 Cal. 163 [3 Pac. 641].) Nor can the recitals contained in the deed as to the consideration paid be accepted as *prima facie* proof of such payment. Such recitals are but the declara-

tions of the grantor." [2] The respondent relies upon and the court apparently accepted as sufficient the recital in the instrument executed and delivered by Thomas F. James to the defendant Howard T. James, purporting to convey the property described in the complaint, wherein it is stated that the said Thomas F. James for a consideration of ten dollars, "to him in hand paid, the receipt whereof is hereby acknowledged, does hereby grant to Howard T. James" all right, title, and interest of the grantor in and to the premises in controversy. The insufficiency of such testimony to establish consideration is explicitly held in the case of *Long* v. *Dollarhide,* 24 Cal. 218. There the court said, where reliance was had upon the recitals in a deed to establish consideration: "The burden of proving this rested upon him (grantee), and the recitals in the deed are not, as he contends, *prima facie* proof of a valuable consideration. Such recitals are but the declarations of the grantor, and it has never been held that the declarations of a vendor or assignor, made after the sale or assignment, can be received to defeat the title of the vendee or assignee. A party seeking to bring himself within the statute cannot rely upon the recitals of his deed, but must prove the payment of the purchase money *aliunde.*" [3] In 9 California Jurisprudence, section 45, page 145, we find the following: "Where the payment of a valuable consideration becomes a material question, the recital in a deed of a valuable consideration paid by the grantee is only evidence of such payment as against the grantor, or against those claiming under the grantor by a subsequent conveyance; but it is evidence of the payment of a valuable consideration only as against those claiming under the grantor by conveyance subsequent to the same. It is, therefore, not evidence as against strangers, nor as against the owner of a prior equity, nor as against one claiming under a prior deed from the same grantor. . . . One claiming as a *bona fide* purchaser for a valuable consideration under a second deed, but recorded first in point of time, must affirmatively prove the payment by other evidence than the deed itself." In *Kenniff* v. *Caulfield,* 140 Cal. 45 [73 Pac. 803], the supreme court had before it the same question and states the rule of law as follows: "In order to defeat the claim of plaintiff under the prior deed, it was incumbent upon the defendant to prove,

that he was a *bona fide* purchaser of the premises in dispute; that he had paid a valuable consideration therefor, and without notice of plaintiff's claim. The burden in that respect was upon him. To entitle a party to protection as such a purchaser, he must aver and prove the possession of his grantor, the purchase of the premises, the payment of the purchase money in good faith, and without notice, actual or constructive, prior to and down to the time of its payment, for, if he had notice, actual or constructive, at any moment of time before the payment of the money, he is not a *bona fide* purchaser," citing cases. To the same effect is *Bell* v. *Pleasant,* 145 Cal. 410 [104 Am. St. Rep. 61, 78 Pac. 957]. These cases establish beyond controversy that the defendant in this case has failed to establish his right to the premises in controversy as a *bona fide* purchaser or to place himself in a position to question the consideration of the prior deed executed by the common grantor to the plaintiff Alice T. James. It may also be here said that the transcript shows that the purported conveyance executed by Thomas F. James contains the following recital: "This deed is given and accepted without any taxable consideration."

[4] Though not exactly in chronological order, we will here consider the finding and alleged failure of consideration relative to the deed under which the plaintiff claims. Neither the allegations of the affirmative defense in the answer nor the findings of the court contain any mention of or intimation that the plaintiff Alice T. James was or had been guilty of any fraudulent representations or fraudulent act relative to the conveyance executed to her by her husband. The only fact appearing in the testimony in relation thereto is that no will has ever been executed by Alice T. James and that the plaintiff stated that she would execute such a will. It may also be mentioned herein that the testimony of the plaintiff is to the effect that she had not altered or changed her intentions in relation thereto up to the time of the attempted conveyance by Thomas F. James to the defendant herein. It seems clear that under such circumstances and the testimony contained in the transcript which we have set forth no case has been made out on the theory of a failure of consideration. In 9 California Jurisprudence, section 42, page 141, it is said: "A deed without fraud in

its inception conveys the title, and is not void on account of failure of consideration, either in whole or in part. And inasmuch as acts done subsequent to the execution of a deed cannot affect its integrity, a subsequent failure of consideration, or breach of a personal covenant not amounting to a condition, will not avoid the deed. Section 1689 of the Civil Code, providing for the rescission of contracts for a failure of consideration through the fault of the party as to whom rescission is made, does not apply to a conveyance of land executed in reliance upon a future promise, where the vendor waives actual performance as a condition of vesting the title. The grantor's only remedy for the breach of a personal covenant is an action for damages. And the failure of a grantee to perform such a covenant does not constitute a defense to an action in which the grantee is seeking to establish property rights conveyed by the deed.''

It may be here stated that the defense of failure of consideration subsequent to the execution of a deed presupposes delivery. Otherwise, there would be no conveyance and nothing upon which to predicate a failure of consideration, prerequisite to judgment of rescission.

In the case at bar there was nothing left to be done or performed with relation to the instrument of conveyance by the grantor. If anything was to be done or performed by the grantee it was to be done or performed subsequent to the time when the deed of conveyance was manually transmitted by the grantor to the possession of the grantee. No act was provided to be then and there performed. The allegation in the answer and the finding of the court are to the effect that the will was to be immediately executed, but the testimony and the actions of the parties do not support either the allegation or the findings in such particular. The deed of conveyance was delivered by the grantor to the grantee upon the simple oral promise, if promise it may be called, that she would execute the desired will, no time or date for the execution thereof being stated, which, of course, would mean within a reasonable time, provided such promise were of any force or effect whatever. [5] Where the contract or agreement on the part of the vendor is wholly executed, the mere promise and failure to perform on the part of the grantee thereafter is not sufficient ground for setting aside a deed. In *Lawrence* v. *Gayetty*, 78 Cal. 126 [12 Am.

St. Rep. 29, 20 Pac. 382], the supreme court thus dis-poses of such an alleged ground for rescission: "Counsel for respondent rely upon section 1689 of the Civil Code. In our judgment the section referred to has no application to a case like this, where the vendor has waived actual per-formance on the part of the vendee, by relying upon his mere promise to perform, and, relying upon such promise to perform in the future, has executed the conveyance, thereby vesting the title to the property in his grantee. The contract on the part of the vendor is wholly executed. If the mere promise and the failure to perform is not sufficient to set aside a deed on the ground of fraud, as we have shown, the fact that the same acts are characterized in the pleading as a failure of consideration cannot give them additional force, and thereby bring about the same result. The case of *Hartman* v. *Reed*, 50 Cal. 485, is in point against the respond-ent." In *Schott* v. *Schott*, 168 Cal. 342 [143 Pac. 595], the supreme court reaffirms the decision of *Lawrence* v. *Gayetty, supra,* cites other cases, and adds: "Under such circum-stances, in the absence of fraud, actual or constructive, de-fendant would have no right to rescind, or to have the deed set aside." To the same effect are the cases of *White* v. *Hendley*, 35 Cal. App. 267 [169 Pac. 710], and *Duckworth* v. *Watsonville Water Co.*, 170 Cal. 425 [150 Pac. 58].

[6] The cases referring to conditions which may furnish a basis for rescission are all based upon conditions set forth in the instrument of conveyance. In the case at bar, there was no condition expressed in the instrument and, in law, it was not delivered conditionally. There was at best only an oral promise on the part of the grantee of some-thing to be done by her at a subsequent time. Under such circumstances section 1056 of the Civil Code applies. The section reads: "A grant cannot be delivered to the grantee conditionally. Delivery to him, or to his agent as such, is necessarily absolute, and the instrument takes effect there-upon, discharged of any condition on which the delivery was made." In 9 California Jurisprudence, section 60, page 165, following a quotation of the section above set forth, we find the text reading thus: "This principle is well fortified by judicial decisions. Hence, if an instrument is delivered to the grantee as the present deed of the grantor it becomes freed from any condition not expressed in the deed itself, and

operates by vesting title immediately without any reference to the performance of the conditions, although such result may be contrary to the express stipulation of the parties. Apart from the elementary rule interdicting the modification or varying of the vital terms of a writing by parol, any attempt to restrict or enlarge the scope or effect of an instrument transferring real property by an oral stipulation is prohibited by the statute of frauds. Hence, whether a deed, when delivered, shall take effect absolutely, or upon the performance of some condition not expressed therein, cannot be determined by parol evidence. Any condition qualifying the delivery must be inserted in the deed itself, or else the deed must not be delivered to the grantee.'' In *Lewis* v. *Brown*, 22 Cal. App. 38 [133 Pac. 331], this court, speaking through Mr. Justice Hart, thus sets forth the law: '' 'If,' as is well said, in *Richmond* v. *Morford*, 4 Wash. 337 [30 Pac. 241, 31 Pac. 513], 'the grantor does not intend that his deed shall take effect until some (oral) condition is performed or the happening of some future event, he should either keep it himself, or leave it with some third person as an escrow, to be delivered at the proper time. If he deliver it as his deed to the grantee, it will operate immediately, without any reference to the performance of the condition, although such a result may be contrary to the express stipulation of the parties at the time of delivery.' '' See, also, to the same effect, 18 California Jurisprudence, 211, section 116, where the law is fully set forth on this point and many authorities cited. It is apparent, therefore, that the delivery of the deed in the case at bar vested a present title in the grantee without any condition whatever affecting its integrity as an instrument of conveyance of real estate.

[7] The respondent urges that the plaintiff must recover upon the strength of her own title and not upon the weakness of the title claimed by her adversary. This is true, and the cases set forth in respondent's brief clearly support the principle contended for, but they are not applicable here for the simple reason that what we have hereinbefore set forth, taken from the findings and the record in this case, clearly establishes that the findings and judgment of the trial court should have been in favor of the plaintiff. For this reason and because it is necessary to order a new trial

herein, we will consider two errors of the trial court upon the admission of testimony. [8] The plaintiff sought to establish a *prima facie* case by producing the deed executed to her by her husband, duly acknowledged, signed, etc. Upon objection of the defendant, admission of the deed was denied until testimony was given of the circumstances under which the deed was delivered and placed in possession of the appellant. Section 1055 of the Civil Code reads: "A grant duly executed is presumed to have been delivered at its date." A deed, when duly executed and acknowledged, in the possession of the grantee and produced by him, is admissible in evidence as *prima facie* proof without anything further. (9 Cal. Jur. 193, sec. 80; *Towne* v. *Towne*, 6 Cal. App. 697 [92 Pac. 1050].) The error of the court, however, in this case was immaterial, as the deed in question was subsequently admitted in evidence.

[9] The next objection which seems necessary to consider is that in relation to excluding testimony as to statements made by the grantor of the plaintiff just before and after the execution and delivery of the conveyance by him to her. It is well settled that all such statements which would indicate that the grantor named in the instrument had divested himself of title are admissible as against interest, although partaking of the nature of hearsay testimony. (*Williams* v. *Kidd*, 170 Cal. 631 [Ann. Cas. 1916E, 703 (and copious notes on pages 713 and 714 thereof), 151 Pac. 1].) Other errors are assigned in the admission and exclusion of evidence, but are not of sufficient importance to require consideration herein. The judgment is reversed.

Thompson, J., *pro tem.*, and Finch, P. J., concurred.